Robert D. PERRY, Appellant
(Petitioner Below),

v.

STATE of Indiana, Appellee
(Respondent Below).

Danny J. RAY, Appellant
(Petitioner Below),

v.

STATE of Indiana, Appellee
(Respondent Below).

Herbert W. WHEELER, Appellant
(Petitioner Below),

v.

STATE of Indiana, Appellee
(Respondent Below).

No. 03S02–8709–PC–818.

Supreme Court of Indiana.

Sept. 4, 1987.

Susan K. Carpenter, Public Defender, Hope Fey, Deputy Public Defender, Indianapolis, for Robert D. Perry.

Robert G. Andree, Jr., Applegate & Shapiro, Bloomington, for Danny J. Ray.

Robert Delano Jones, Susan Lacava, Rogers, McDonald & Jones, Bloomington, for Herbert W. Wheeler.

Linley E. Pearson, Atty. Gen., Marguerite M. Sweeney, Jay Rodia, Michael Gene Worden, Deputy Attys. Gen., Indianapolis, for appellees.

SHEPARD, Chief Justice.

Appellee State of Indiana seeks transfer of a decision on the issue of laches favorable to appellants Danny Ray and Herbert Wheeler, *Ray v. State* (1986), Ind.App., 496 N.E.2d 93. Appellant Robert Perry seeks transfer of a Court of Appeals' decision affirming the denial of his petition for post-conviction relief, *Perry v. State* (1986), Ind. App., 492 N.E.2d 57. Each petitioner claims a conflict with the Court of Appeals' decision in the other petitioner's case. Because these cases involve a similar issue, we consolidate them to consider the nature

of the proof required to establish the defense of laches against a petition for post-conviction relief.

The common issue presented by these cases is whether the State can meet its burden to prove unreasonable delay under circumstances permitting diligence by showing circumstances such as to put a person on inquiry.

### I. Historical Application of Laches

We commence from a definition of laches often repeated in our cases:

> laches ... is the neglect for an unreasonable or unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. It is an implied waiver arising from knowledge of existing conditions and an acquiescence in them, the neglect to assert a right, as taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to the adverse party and thus operating as a bar in a court of equity.

*Frazier v. State* (1975), 263 Ind. 614, 616–617, 335 N.E.2d 623, 624.

Before the existence of our current Rules of Procedure for Post-Conviction Proceedings, a judgment of conviction could be collaterally attacked by a writ of error *coram nobis*. This writ could be brought at any time. *Murphy v. Daly* (1933), 206 Ind. 179, 188 N.E. 769. An early statute which raised a presumption of waiver after a lapse of five years, 9–3301 Burns 1949 Supp., Acts of 1947, Ch. 189, was held to violate due process. *State ex rel. McManamon, et al. v. Blackford Circuit Court, et al.* (1950), 229 Ind. 3, 95 N.E.2d 556. A requirement of diligence, however, was still imposed. As Chief Justice Young wrote for the Court: "[I]f, from such presentation of evidence, it occurs to the trial judge that sufficient time has elapsed since the sentence of the man and that the man, in fact, had sufficient knowledge of his rights, the petition should be denied for lack of diligence." *Id.* at 16, 95 N.E.2d at 561.

The requirement of due diligence later was eliminated "when it is alleged and proved that petitioners' constitutional rights have been violated." *State v. Lindsey* (1952), 231 Ind. 126, 133, 106 N.E.2d 230, 233. If petitioners' constitutional rights had been violated, "the judgments were void.... where a judgment is void, laches does not operate to preclude the opening or vacating of a void judgment, for the reason that no amount of acquiescence can make it valid." *Id.* at 132, 106 N.E.2d at 232.[1] Due diligence remained a requirement for writs of *coram nobis* in cases which did not allege void judgments. This requirement was most often stated when writs were sought following trial and conviction and the writ was analogous to a motion for new trial. *See Burton v. State* (1964), 246 Ind. 197, 202 N.E.2d 165; *Barker v. State* (1963), 244 Ind. 267, 191 N.E.2d 9.

This distinction continued when the writ of error *coram nobis* was replaced by proceedings under the Rules of Procedure for Post-Conviction Remedies, Ind.Rules of Procedure. A petitioner seeking a belated motion to correct error and belated appeal must show diligence in pursuing appellate relief. Rule P.C. 2, §§ 1(c), 2(d). A petition under Rule P.C. 1, however, may be filed at any time. Rule P.C. 1, § 1(a). "A showing of diligence is not a prerequisite to relief under P.C. 1...." *Langley v. State* (1971), 256 Ind. 199, 211, 267 N.E.2d 538, 545.

The inherent tension between proceedings which allow a judgment to be challenged at any time and finality of judgments is apparent. As the Court stated in *Langley*:

> In the name of justice and fair play this court, through its promulgation of our post-conviction remedy rules and by case decision, has sought to insure that each defendant will have an avenue available by which he may challenge on appeal the correctness of his conviction. It was not

our intent, however, to provide a means whereby one convicted could repeatedly re-litigate claims of improper conviction, or could *unqualifiedly*, upon a legitimate waiver of the right to appeal either expressly made or to be inferred through application of appropriate legal principles, raise an untimely challenge directed at some aspect of the proceedings against him.

*Id.* at 203, 267 N.E.2d at 540 (emphasis in original).

Thus, while post-conviction relief is available at any time, the right to post-conviction relief may be waived directly or through implication. Laches is a doctrine which infers a legitimate waiver of the right to challenge a judgment. "Strictly speaking, a waiver is the intentional relinquishment of a known right, claim or privilege." *Frazier*, 263 Ind. at 616, 335 N.E.2d at 624. For laches to bar relief, the State must prove by a preponderance of the evidence, first, that the petitioner unreasonably delayed in seeking relief and, second, that the State has been prejudiced by the delay. *Lacy v. State* (1986), Ind., 491 N.E.2d 520, 521; *Pinkston v. State* (1985), Ind. App., 479 N.E.2d 79. Though we have sometimes said that the State must also show "petitioner had knowledge of existing conditions and acquiesced in them ..." *Gipson v. State* (1985), Ind., 486 N.E.2d 992, 993, that is not really a separate, third requirement. Petitioner's knowledge and acquiescence is implicit in a finding of "unreasonable delay under circumstances permitting diligence." Unless a petitioner has knowledge of a defect in his conviction or of the means to seek relief from the conviction, he can seldom be said to have delayed unreasonably in seeking relief.

## II. Actual Knowledge, Constructive Knowledge, And Inquiry Notice

The State has the burden to prove each element of laches by a preponderance of

---

1. The Court in *Lindsey* stated that when the petition "alleges a violation of constitutional rights to be represented by counsel, and the accused sustains the burden of overcoming the presumption that the judgment is valid, and the court finds a violation of constitutional rights, then all facts thereafter are void." *Lindsey*, 231 Ind. at 133, 106 N.E.2d at 232. A mere allegation of a constitutional violation will not defeat a laches defense.

the evidence. The elements include knowing acquiescence which leads to unreasonable delay. *Twyman v. State* (1984), Ind., 459 N.E.2d 705, 711–12. A less settled question, however, is whether the State must have proof of actual knowledge or whether knowledge may be imputed from constructive knowledge or inquiry notice.

■ The doctrine of laches cannot be predicated upon constructive knowledge. "[D]iscovery means something more than the knowledge with which the law charges one but which he does not actually have. Laches denotes a conscious indifference or procrastination which is wholly absent in one whose knowledge is constructive only." *Miladin v. Istrate* (1954), 125 Ind.App. 46, 56, 119 N.E.2d 12, 18.

■ While knowledge imputed by operation of law through constructive knowledge is not sufficient to establish laches, the State argues that laches should be imputed to the petitioner by charging him with "inquiry" notice. The case most often cited for this proposition in the context of post-conviction proceedings is *Morrison v. State* (1984), Ind.App., 466 N.E.2d 783, in which the Second District declared that relief could be denied "where the circumstances are such as to put a person on inquiry, and the means of ascertaining the truth are readily available if inquiry is made, the neglect or failure to inquire will charge the person with laches the same as though the facts were known." *Id.* at 787.

This language originated in *Hutter v. Weiss* (1961), 132 Ind.App. 244, 258, 177 N.E.2d 339, 346, which was an action to quiet title in real estate. In that case, the Court determined there was neither evidence of appellant's actual knowledge nor facts which could charge him with notice, such as evidence that others were exercising ownership or claiming adverse to him. Inquiry notice which is imputed from objective facts, such as the open and notorious use of land by an adverse claimant, is distinct from notice which is imputed from the mere passage of time in post-conviction proceedings.

Placing a petitioner on inquiry notice from the date of his conviction presumes that the petitioner is aware of defects in his conviction on the date it is entered, knows of the means by which he may seek relief from the conviction and, armed with this information, acquiesces in the entry of an invalid conviction. Such a presumption is neither reasonable nor realistic.

Knowledge has also been presumed from a change of circumstances, such as being sent to prison, which should prompt a reasonable person to further inquiry. Such an objective presumption of knowledge is not probative of the knowing acquiescence required to show unreasonable delay. Implying knowledge by operation of law is incompatible with the equitable doctrine of laches, which must be based on a showing of conscious indifference. *Miladin*, 125 Ind.App. at 56, 119 N.E.2d at 18; *Fields v. Evans* (1985), Ind.App., 484 N.E.2d 36, 39.

Inquiry notice alone is not sufficient to support a finding of unreasonable delay under circumstances permitting diligence. Knowledge may not be presumed from the occurrence of any particular event. Nonetheless, we do not require the State to supply direct proof of petitioner's knowledge. Circumstantial evidence is sufficient to show state of mind. Facts from which a reasonable finder of fact could infer petitioner's knowledge may support a finding of laches. *See, e.g., Lacy*, 491 N.E.2d at 521 (ten year delay unreasonable where petitioner knew of grounds for appeal six years prior to filing petition); *Gregory v. State* (1986), Ind., 487 N.E.2d 156, 158 (evidence that petitioner had been in and out of penal institutions for thirteen years, had heard talk about "getting a P.C." but never pursued this information was sufficient proof of unreasonable delay under circumstances permitting diligence); *Parrish v. State* (1986), Ind.App., 498 N.E.2d 73, 75 (evidence that petitioner spent eight out of thirteen years in the penitentiary, had three guilty plea hearings, one trial and heard other prisoners talk about post-conviction proceedings sufficient to support a finding of laches); *Cheney v. State* (1986), Ind.App., 488 N.E.2d 739, 741 (evidence that petitioner filed other post-conviction petitions in 1975 and 1979 and knew in 1974

that he should have been given advisements at guilty plea sufficient to support finding of unreasonable delay); *Nine v. State* (1985), Ind.App., 484 N.E.2d 614, 616 (evidence the petitioner was represented by counsel at guilty plea, filed petition to modify sentence in 1980 and was again represented by counsel when probation revoked in 1981 was sufficient to prove five-year delay unreasonable); *Pinkston*, 479 N.E.2d at 82 (evidence that petitioner had advice of at least seven attorneys over a period of ten years, gave appellate counsel copies of legal memoranda, wrote letters for other inmates regarding legal matters, and had extensive contact with the criminal justice system sufficient to support finding of laches).

■ While the evidence in some cases has provided the proverbial "smoking gun" of actual knowledge of post-conviction remedies, no one factor is controlling. Repeated contacts with the criminal justice system, consultation with attorneys and incarceration in a penal institution with legal facilities are all facts from which the fact finder may infer knowledge. The determination of sufficiency, of course, must be made by the trial court; if there is probative evidence to support its determination, we will affirm the trial court's judgment. *Lacy*, 491 N.E.2d at 521. The court is not obligated to infer knowledge from any particular set of circumstances, nor is it bound to accept petitioner's assertions of ignorance. The State must, however, present some objective facts from which the court may draw a reasonable inference of knowledge.

### III. Sufficiency of the Evidence in These Cases

■ In April 1982, Perry filed separate petitions challenging three guilty pleas entered in 1975, 1977 and 1979. Perry's guilty pleas had led to a determination that

he was an habitual traffic offender and to a ten-year suspension of his driver's license. By the time of the post-conviction hearing, Perry faced new charges of driving with a suspended license.

The State raised laches. The evidence at the post-conviction hearing showed that Perry had been convicted three times of driving under the influence and twice of driving with a suspended license since 1975. Apparently, each conviction resulted from an uncounseled guilty plea, and there is no indication that Perry consulted counsel until 1982, when the public defender assigned to represent him on the habitual traffic offender charge suggested he contact an attorney to challenge his underlying convictions. Though Perry spent occasional weekends in county jails as a result of some convictions, there is no evidence he was ever incarcerated in a penal institution with legal facilities.

In denying the three petitions, the trial court made specific and comprehensive findings of fact and conclusions of law. These findings show that the trial court relied upon inquiry notice as sufficient evidence of knowing acquiescence to support a finding of unreasonable delay.[2] The Court of Appeals affirmed the trial court's ruling that laches barred relief, also relying on inquiry notice as evidence of knowing acquiescence.

Because knowledge imputed by inquiry notice is not sufficient to show unreasonable delay under circumstances permitting diligence, the trial court's determination cannot be affirmed on the basis of inquiry notice. However, the evidence presented by the State raises a question of fact as to any knowledge which may reasonably be inferred from Perry's activities since 1975. We therefore grant Perry's petition for transfer and remand those causes to the trial court to determine if the facts presented by the State are sufficient to infer under

2. In its findings on the first post-conviction petition, the court cited *Morrison*, 466 N.E.2d 783, and found "[d]efendant's loss of driving privileges and subsequent finding as a habitual traffic offender are sufficient reason to cause a person believing himself wronged to make inquiry." In its findings on one of the companion petitions, the court further found that "[d]efen-

dant was not aware of any procedure to challenge his conviction and never considered the possibility or desirability of such action until early in 1982." The court also found "[t]he burden of proof is upon the Defendant to show justification for the delay in bringing his action for post-conviction relief. That burden has not been met."

the circumstances that Perry had knowledge of a defect in his convictions or knew of the possibility of a challenge to his convictions.[3]

■ Appellants Ray and Wheeler also pled guilty to traffic offenses and later challenged their convictions in petitions for post-conviction relief. Without making specific findings of fact, the trial court concluded that the petitions were barred by laches. The only evidence of unreasonable delay in either case was the earlier conviction now being challenged. The State did not present evidence of further contact with the criminal justice system, later consultation with attorneys, or any other facts from which the court might reasonably have inferred knowledge. The Court of Appeals required "specific facts from which each could reasonably have been aware that he might have a right to relief form his plea," *Ray* 496 N.E.2d at 99, and reversed the trial courts' finding of laches. Reviewing the trial court's denial of post-conviction relief on the merits of the petitions, it affirmed.

Because there was a complete lack of evidence from which the court could infer knowledge, no further factual determination is necessary. The Court of Appeals properly reversed the trial court's finding of laches. Therefore, the State's petition to transfer is denied.

Appellant Perry's petition is granted, the trial court is reversed and the cause remanded for further proceedings consistent with this opinion.

DeBRULER and DICKSON, JJ., concur.

GIVAN, J., concurs in result.

PIVARNIK, J., dissents and would deny transfer.

---

3. Perry also challenges the adequacy of the State's proof of prejudice resulting from Perry's delay. Unreasonable delay alone is not sufficient to support a finding of laches. The State must also show that it was prejudiced by the delay. *Gipson*, 486 N.E.2d at 993. In this case, the trial court found that the State had proved prejudice by showing that all three arresting officers, generally the only witnesses in traffic offenses, had no independent recollection of the incidents. In the context of traffic offenses, we find this evidence sufficient to support a finding of prejudice.